UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JOHN CIANI and SCOTT GREEN,

       Plaintiffs,
v.                            Case No. 8:14-cv-2197-T-33AEP

TALK OF THE TOWN RESTAURANTS,
INC., D/B/A CHARLEY'S
STEAKHOUSE,

       Defendant.
_____/

**ORDER**

This matter comes before the Court pursuant to Plaintiff John Ciani and Scott Green's ("Plaintiffs") Motion for Conditional Certification and Court Authorized Notice Pursuant to 29 U.S.C. § 216(b) (Doc. # 22), which was filed on December 8, 2014. Defendant Talk of the Town Restaurants d/b/a Charley's Steakhouse ("Charley's") filed a Response in Opposition to the Motion on January 5, 2015. (Doc. # 36). For the reasons that follow, the Motion is granted as detailed herein.

**I.   Background**

Ciani worked as a server for Charley's from March of 2011 to January of 2013. (Doc. # 2 at 2). Green worked as a server for Charley's from February of 2009 to May of 2014. (Id.). Plaintiffs contend that they "were paid less than the federal minimum wage, specifically; Defendant has been taking

advantage of the tip credit, which allows Defendant to include in its calculation of wages a portion of the amounts employees receive in tips. (Id. at 3). Furthermore, Plaintiffs argue that "Plaintiffs were subject to a company-wide policy whereby they were not paid all overtime compensation earned when they worked in excess of forty hours during any given week, and were also not paid minimum wage. (Doc. # 22 at 2).

Green asserts that he was "paid an hourly rate of approximately $4.91 for the 30 hours" he worked per week and he usually worked four to five days per week. (Doc. # 22-4). Furthermore, Charley's "also had a mandatory policy in place which required all servers who worked banquets to pay directly from their tips 3% of the gross sales earned calculated on a pro rata basis per server . . . This cash was taken from each banquet by Defendant and then sent to Defendant's headquarters in Orlando, Florida." (Id. at 2). Ciani stated that he was paid "an hourly rate of approximately $4.91 for the 35-45 hours" he worked per week and typically worked four to six days per week without overtime pay. (Doc. # 22-5). "On at least one occasion [Ciani] worked 19 days in a row." (Id.).

In addition to Plaintiffs, another former Charley's employee has come forward with a declaration indicating that Charley's employees were required to give a percentage of

their tips to non-tipped employees and the corporation. (Doc. # 22-6).

Plaintiffs initiated this action on August 1, 2014, in Circuit Court. On September 4, 2014, this case was removed from the Thirteenth Judicial Circuit in and for Hillsborough County, Florida by Charley's and the same day the Complaint was filed requesting payment of unpaid back wages and overtime compensation pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b), as well as other relief. (See Doc. ## 1, 2). At this juncture, Plaintiffs seek an order conditionally certifying this case as a collective action consisting of "all 'servers' and 'bartenders' who worked for Defendant within the last three years who believe they: (1) were not paid proper overtime or minimum wage compensation during any work week of their employment within the applicable statute of limitations period; and (2) were subject to Defendant's 'tip-pool' policies." (Doc. # 22 at 2).

Among other arguments, Charley's asserts that conditional certification is not appropriate because "Plaintiffs have not demonstrated that a sufficient number of other individuals desire to opt into this lawsuit in order to justify a collective action throughout central Florida." (Doc. # 36). As will be discussed below, the Court finds that Ciani and

3

Green meet the low threshold required for conditional certification.

## II. **Legal Standard**

The Fair Labor Standards Act expressly permits collective actions against employers accused of violating the FLSA's mandatory overtime provisions. See 29 U.S.C. § 216(b) ("[a]n action . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated."). In prospective collective actions brought pursuant to Section 216(b), potential plaintiffs must affirmatively opt into the collective action. Id. ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

The Eleventh Circuit has recommended a two-tiered procedure for district courts to follow in determining whether to certify a collective action under § 216(b). Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1242 (11th Cir. 2003)(citing Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1218 (11th Cir. 2001)). The first tier, known as the notice stage, is relevant here. "At the notice stage, the district court makes a decision - usually based on the

4

pleadings and any affidavits which have been submitted - whether notice of the action should be given to potential class members." Id. at 1243.

The Court must determine whether there are other employees who desire to opt-in and whether those employees are similarly situated. Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1258 (11th Cir. 2008); Dybach v. State of Fla. Dep't of Corrections, 942 F.2d 1562, 1567-68 (11th Cir. 1991). This determination is made using a "fairly lenient standard." Hipp, 252 F.3d at 1218.  Plaintiffs bear the burden of showing a reasonable basis for the contention that there are other similarly situated employees who desire to join in the litigation.  Dybach, 942 F.2d at 1567-68.

**III. Conditional Certification Analysis**

**A.   Other Individuals Seek to Join the Suit**

The record reflects that there are two named Plaintiffs (John Ciani and Scott Green) and two Opt-In Plaintiffs (David Laycock and Anthony Muto) ("Opt-In Plaintiffs") who have filed consent documents reflecting their desire to join in the action. (Doc. ## 17, 18).

Although there is no magic number requirement for the notice stage, the presence of two opt-in plaintiffs, each having filed a declaration describing their working conditions

5

and their desire to join in this suit, satisfies the Court that others desire to join in the action. See, e.g., Robbins-Pagel v. WM. F. Puckett, Inc., No. 6:05-cv-1582-Orl-31DAB, 2006 U.S. Dist. LEXIS 85253 (M.D. Fla. Nov. 22, 2006)(finding that three affidavits alleging claims of unpaid overtime was sufficient to establish that other individuals were interested in joining the action); Dieujuste v. R.J. Elec., Inc., No. 7-80272, 2007 U.S. Dist. LEXIS 100531 (S.D. Fla. Aug. 21, 2007)(granting conditional certification when two individuals sought overtime wages against the same employer and each filed a declaration); Pendlebury v. Starbucks Coffee, Co., No. 04-cv-80521, 2005 U.S. Dist. LEXIS 574 (S.D. Fla. Jan. 3, 2005)(granting conditional certification upon consideration of four affidavits from store managers complaining of improper exemption from overtime eligibility). The Court finds that Plaintiffs have met their burden of demonstrating that other employees seek to join the action.

### B.  **The Employees are Substantially Similar**

As explained in Morgan, the plaintiff's burden of showing a "reasonable basis" for the claim that "similarly situated" employees seek to join the action is "not particularly stringent, fairly lenient, flexible, not heavy, and less stringent than that for joinder under Rule 20(a) or for

6

separate trials under 42(b)." 551 F.3d at 1260-61 (internal citations omitted).

For purposes of defining the "similarly situated class" pursuant to § 216(b), Plaintiffs need only show that the defined class is comprised of representatives who are similarly situated to them with respect to their "job requirements and pay provisions." See Dybach, 942 F.2d at 1568. In support of their Conditional Certification Motion, Plaintiffs offer declarations explaining that Plaintiffs were similarly-situated in that they: "(1) perform similar duties, (2) worked similar hours, (3) were not paid overtime and/or minimum wages in accordance with the FLSA, (4) were subjected to the same illegal tip pool policies and, (5) worked at the same location for Defendant." (Doc. # 22 at 10).

Furthermore, Plaintiffs allege that "another way for the Court to determine whether the notice-stage 'similarly situated' requirement has been met is by evidence that the putative class members were victims of a common decision, policy, plan or practice." (Id.). Under the FLSA, it is permissible for an employer to pay an employee cash wages below minimum wage if the employer supplements the difference with the employee's tips, which is referred to as the employer taking a "tip credit." (Id.). Here, Ciani and Green argue that

7

"the primary issue in the present matter concerns the second prong of the tip credit, whether the inclusion of kitchen staff in the servers' and bartenders' tip pool invalidates the Defendant's use of the tip credit in paying these employees a reduced minimum wage." (Id.). The declarations attached as exhibits to the present Motion confirm that Charley's employed hundreds of similarly situated employees, that all of these employees were paid an hourly rate, worked similar hours, and were subject to the "tip credit" described above. Each declarant also indicates that there are "many, many other servers and bartenders who want to join this lawsuit." (Doc. ## 22-4, 22-5, 22-6).

Charley's contends that Plaintiffs and the Opt-In Plaintiffs are not similarly situated because "Plaintiffs and the opt-ins even amongst themselves have divergent experiences with respect to overtime." (Doc. # 36 at 12). Furthermore, Charley's argues that "Plaintiffs' tip sharing claim also depends on highly factual and individualized circumstances, which militate against collective treatment." (Id.). "The purported class of hourly workers here includes current and former employees who will have vastly different experiences from location to location, position to position, manager to manager, shift to shift, and day to day with respect to tip-

8

sharing." (Id. at 13). In addition, Charley's has filed competing affidavits by present Charley's employees challenging Plaintiffs' allegations that Plaintiffs worked overtime and did not receive appropriate compensation and the allegations regarding the "tip credit." (Doc. # 36-1). However, the evidence Charley's proffers exceeds by far this Court's limited inquiry at the notice stage of the conditional certification process.

The court was faced with a similar situation in Simpkins v. Pulte Home Corporation, No. 6:08-cv-130-Orl-19DAB, 2008 U.S. Dist. LEXIS 64270 (M.D. Fla. Aug. 21, 2008). There, Pulte classified all superintendents as exempt from overtime and Simpkins, a superintendent, filed a FLSA action. Id. at *10-11. Simpkins sought conditional certification. Id. Similar to Charley's strategy, "Pulte present[ed] a mass of evidence in opposition to Simpkins collection of declarations," including evidence showing that superintendents had varying levels of education, training, and licensure; worked on different types of projects; had varying amounts of discretion; and worked flexible hours. Id. at *14.

There, the Court noted that "the evidence Pulte presents goes far beyond the scope of this Court's review at the first stage of the certification process." Id. at *15. The Simpkins

9

court granted conditional certification after finding that Simpkins demonstrated a reasonable basis to conclude that other similarly situated superintendents wished to join the action. Following the sound reasoning of <u>Simpkins</u>, this Court determines that Plaintiffs and the Opt-In Plaintiffs have shown that there are similarly situated employees who seek to join this action, and Charley's arguments arrayed against conditional certification are prematurely asserted.

An analogous situation arose in <u>Reyes</u>. There, a group of retail account executives sought conditional certification of a FLSA action. AT&T countered with a deluge of competing affidavits, including numerous affidavits by current retail account executives claiming that they were all properly compensated. The court declined AT&T's invitation to engage in a "battle" of the affidavits. 801 F. Supp. 2d at 1358. This Court similarly considers, but is not convinced by, Charley's affidavits, including affidavits filed by current employees indicating contradictory information on overtime and tip practices. See <u>Creely v. HCR Manorcare, Inc.</u>, 789 F. Supp. 2d 819, 839 (N.D. Ohio 2011)("[T]his Court is not swayed by [defendant's] submission of thirty-five 'happy camper' affidavits. . . . [T]he Court's function at this stage of conditional certification is not to perform a detailed review

10

of individual facts from employees hand-picked by [defendant]. Those questions of breadth and manageability of the class are left until the second stage analysis following the receipt of forms from all opt-in plaintiffs.").

Nor do Charley's affidavits pinpointing variations in the individual titles, schedules, and practices convince the Court that conditional certification is unwarranted. See <u>Vondriska v. Premier Mort. Funding, Inc.</u>, 564 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007) ("Variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at the notice stage."); <u>Morgan</u>, 551 F.3d at 1261-62 (courts should consider at the second stage "the various defenses available to defendant[s] [that] appear to be individual to each plaintiff."); <u>Pendlebury</u>, 2005 U.S. Dist. LEXIS 574, at *10 (granting conditional certification and refusing to consider factual dispute raised by defendant at the conditional notification stage where plaintiff offered affidavits establishing a similarly situated class).

Thus, to the extent Charley's tenders competing affidavits, the Court declines to engage in a credibility analysis. The Court finds that the employees are substantially similar for the notice stage of conditional certification.

11

### C. Geographical Scope of the Litigation

Charley's correctly argues that Plaintiffs and the Opt-In Plaintiffs have only provided statements about the conditions at Charley's Steakhouse in Tampa, Florida. (Doc. # 36 at 17). Charley's requests that any order granting conditional certification should be limited to the location at which Plaintiffs and the Opt-In Plaintiffs worked. (Id.). The Court agrees. There is no evidence before the Court bearing upon the manner in which Charley's employees outside of Tampa, Florida are compensated, nor have Plaintiffs and the Opt-In Plaintiffs made any supported allegations that the other locations follow the same procedures as the Tampa, Florida location. The Court determines that it is appropriate to limit the breadth of this action to Charley's Tampa, Florida location.

### D. Content of Class Notice

Plaintiffs proposed form of Class Notice (Doc. # 22-1) is also before the Court. Charley's raises a number concerns with respect to the Class Notice, including that it lacks information concerning Opt-In Plaintiffs' obligations and rights. (Doc. # 36 at 18).

Court-authorized notice in a class action context helps to prevent "misleading communications" and ensures that the notice is "timely, accurate, and informative." Hoffmann-La

12

Roche, Inc. v. Sperling, 493 U.S. 165, 171 (1989). The Court also agrees that Plaintiffs proposed Class Notice does not fully advise the notice recipients (1) that if they opt in, they may be required to appear for trial and (2) if Plaintiffs are unsuccessful, Charley's may attempt to recover its costs from the potential class members. See Sealy v. Keiser Sch. Inc., No. 11-cv-61426, 2011 U.S. Dist. LEXIS 152369, at *13 (S.D. Fla. Nov. 8, 2011)(finding that the proposed class notice failed to fully advise potential class members of the consequences of opting into the suit, including that defendant may attempt to recover its costs from the potential class members if the lawsuit is unsuccessful and that the potential class members may be required to appear for trial). The Court directs counsel from both parties to jointly revise the Class Notice to more adequately reflect the consequences for opt-in Plaintiffs.

Having addressed the issues raised with respect to the Class Notice and the scope of the action, the Court directs counsel for Charley's and counsel for Plaintiffs to confer regarding the proposed Class Notice. The parties are directed to file an agreed form of Class Notice for the Court's approval by February 2, 2015.

    **E.**     **Dissemination of the Class Notice**

Plaintiffs assert that the Class Notice should be sent via first class mail and posted at each of Defendants' locations. (Doc. # 22 at 12). Furthermore, Plaintiffs state that "due to the transient nature of the putative class members and the possibility that Defendant does not have accurate physical addresses for its former employees, Plaintiffs further request that they be permitted to send, via Electronic Mail, a 'Follow-Up' notice." (Id.). Charley's does not argue against the Class Notice being disseminated via first class mail, but objects to the posting of Class Notice at any of its locations. (Doc. # 36 at 18). Charley's also argues against reminder notice by electronic mail on the grounds that it is unwarranted. (Id.).

The Court determines that it is appropriate to furnish Class Notice via first class mail. The Court denies without prejudice Plaintiffs request that Class Notice be posted at Charley's locations and for an email "follow-up" notice. The Court notes that other courts have required that Class Notice be posted at the workplace only after a showing that a defendant has failed to cooperate in the collective action process. See, e.g., Sutton v. Singh, No. 6:12-cv-1254-Orl-28TBS, 2013 U.S. Dist. LEXIS 81162, at *12-13 (M.D. Fla. May 2, 2013)(finding the plaintiffs' request for posting of class

14

notice at the workplace to be "premature" because the plaintiffs did not show that the defendant "produced an inadequate list of names and/or addresses to [p]laintiffs, thereby necessitating some other form of notice."). In this case, the Court directs Charley's to produce to Plaintiffs by February 2, 2015, a list containing the names and last known addresses, which includes employees (or former employees) from the Tampa, Florida location within the last three years. The Court may reconsider its determination regarding posting Class Notice in the workplace and email "follow-up" notice if Plaintiffs show that Charley's has failed to timely and adequately provide the contact information described above.

Accordingly, it is

**ORDERED, ADJUDGED,** and **DECREED:**

(1) Plaintiffs John Ciani and Scott Green's Motion for Conditional Certification and Court-Authorized Notice Pursuant to 29 U.S.C. § 216(b) (Doc. # 22) is **GRANTED** as described herein.

(2) The parties are directed to file with this Court a Jointly Proposed Notice to the Class by February 2, 2015.

(3) Charley's is directed to produce to Ciani and Green by February 2, 2015, a list containing the names and last known addresses of putative class members as described

15

above.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 16th day of January, 2015.

<u>/s/ Virginia M. Hernandez Covington</u>
VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies: Counsel of Record